**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| TIFFANY HOLODNAK, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-3250 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 7, 14 |
| | : | | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS (ECF NO. 7) AND
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF NO. 14)**

**I. INTRODUCTION**

Plaintiff Tiffany Holodnak brings this action against her former employer, Defendant Service Employees International Union ("SEIU"), for alleged violations of the Federal Family and Medical Leave Act ("FMLA") and Title VII of the Civil Rights Act of 1964. SEIU has moved to dismiss the complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). Having considered the parties' memoranda, the motion is denied as to the FMLA claims and granted as to the Title VII claim.

**II. FACTUAL BACKGROUND**[1]

Holodnak started working at SEIU on April 9, 2018, as a Human Resources Manager. Am. Compl. ¶¶ 8–9, ECF No. 12. Until July 2019, Leslie Edmond was Holodnak's direct supervisor. *Id.* ¶ 11. Edmond allegedly harassed Holodnak because Holodnak was a "single

---

[1] These facts are drawn from the Amended Complaint and taken as true for the purpose of resolving SEIU's motion to dismiss.

mother" with "small children." *Id.* ¶ 14. This included commenting that having children would interfere with Holodnak's job responsibilities, criticizing Holodnak for taking leave to tend to her children when they were sick, and not allowing Holodnak to telework while commenting that telework is not for childcare. *Id.* ¶¶ 15–18. Colleagues without children were not subjected to such comments. *Id.* ¶ 19.

In June 2019, Holodnak requested, and was granted, leave to care for her ailing father. *Id.* ¶ 22. The day before Holodnak returned to work, Marc Goumbri became her new supervisor. *Id.* ¶ 24. "Upon her return, Mr. Goumbri told Plaintiff that he would deny any and all of Plaintiff's future leave requests if she did not ask and get a response from him first, even if the leave was designated under FMLA." *Id.* ¶ 26. This "threat discouraged Plaintiff from using her future leave." *Id.* ¶ 28.

In August 2019, during her children's summer break, Holodnak's childcare plans fell through. *Id.* ¶ 29. Holodnak notified her department and Goumbri that she needed to stay home to take care of her children. *Id.* ¶ 30. Upon her return to work, Goumbri "again threatened to discipline Plaintiff for taking leave." *Id.* ¶ 32.

"Following Mr. Goumbri's threats," Holodnak told SEIU's Deputy General Counsel that Goumbri was discriminating against her due to her gender and familial responsibilities, and also discouraging her from exercising her FMLA rights via threats.[2] *Id.* ¶¶ 38–39. Goumbri became aware of Holodnak's complaint about him, after which he excluded Holodnak from meetings, took away "major aspects of her job duties," and in mid-September 2019 moved her to a small

---

[2] SEIU says that the complaint incorrectly refers to this lawyer as "General Counsel," but the complaint refers to this lawyer as "Deputy General Counsel." *See* Mem. Supp. Def. SEIU's Mot. Dismiss Pl.'s Am. Compl. ("Mem.") at 2 n.1, ECF No. 14; Am. Compl. ¶¶ 38–40, 44.

office that was farther away from her team. *Id.* ¶¶ 40, 42–43, 45. Holodnak again complained to the Deputy General Counsel about Goumbri. *Id.* ¶ 44.

On October 15, 2019, despite receiving positive feedback on her performance, Goumbri terminated Holodnak from her position.[3] *Id.* ¶ 46. Holodnak had a large amount of vacation days accrued at the time of her termination because she feared exercising her rights to take time off, and SEIU withheld payout for these days. *Id.* ¶¶ 47–48.

On October 18, 2019, Holodnak saw her doctor, who remarked that Holodnak's health had declined, recommended hospitalization, and "strongly recommend[ed]" that Holodnak go on FMLA leave due to her lab results. *Id.* ¶¶ 35–36. Holodnak did not take FMLA leave because she was "deterred" by Goumbri's earlier comments. *Id.* ¶ 37.

After her termination, Holodnak filed an Equal Employment Opportunity Commission ("EEOC") charge, followed by the EEOC conducting an investigation and providing a Notice of Right to Sue. *Id.* ¶¶ 5–6. Holodnak then filed her complaint with this Court on November 10, 2020. *See* Compl., ECF No. 1. SEIU moved to dismiss on March 5, 2021. *See* Def.'s Mot. Dismiss, ECF No. 7. Holodnak filed an amended complaint on May 5, 2021. *See* Am. Compl. SEIU moved to dismiss the amended complaint on June 6, 2021, and the motion is fully briefed. *See* Mem. Supp. Def. SEIU's Mot. Dismiss Pl.'s Am. Compl. ("Mem."), ECF No. 14; Pl.'s Resp. Opp'n Def.'s Mot. Dismiss Pl.'s Am. Compl. ("Opp'n"), ECF No. 15; Reply Supp. Def. SEIU's

---

[3] SEIU suggests that Holodnak was terminated on November 15, 2019, as opposed to October 15, pointing out that the October 15 termination date conflicts with the allegation that Holodnak's doctor recommended that she take FMLA leave on October 18, 2019. Mem. at 6 n.3, 9 n.6. But SEIU does not move for summary judgment and provide evidence to support this later termination date. Instead, SEIU makes its arguments premised on the October termination date. Holodnak makes no attempt to clear up the issue in her brief. Because neither party took the opportunity to resolve this issue definitively and we are in an early stage of the case, the Court will, for now, give Holodnak the benefit of the doubt regarding the timeline.

Mot. Dismiss Pl.'s Am. Compl. ("Reply"), ECF No. 16. The first motion to dismiss (ECF No. 7) is denied as moot.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim" to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555. However, a court considering a motion to dismiss presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

"In deciding a 12(b)(6) motion, a court may 'consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of

which [the Court] may take judicial notice.'  When the plaintiff alleges the filing of an administrative charge, that charge may be deemed incorporated into the complaint and the court can consider it on a motion to dismiss." *Greer v. Bd. of Trs. of the Univ. of the D.C.*, 113 F. Supp. 3d 297, 304 (D.D.C. 2015) (citation omitted) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

## IV.  ANALYSIS

The complaint contains three counts: (I) FMLA interference; (II) FMLA retaliation; and (III) Title VII discrimination.  Am. Compl. at 7–10.  For Count I, SEIU argues that the alleged facts do not show conduct that interfered with the exercise of Holodnak's FMLA rights.  Mem. at 5–8.  For Count II, SEIU argues that the alleged facts cannot show causation between protected activity and adverse employment action.  *Id.* at 8–10.  For Count III, SEIU argues that Holodnak failed to exhaust administrative remedies and failed to allege discrimination of a type protected by Title VII.  *Id.* at 10–14.  For the reasons given below, the Court concludes that SEIU has not demonstrated that Counts I or II fail to state a claim, but also that Holodnak indeed failed to exhaust administrative remedies.

### A.  FMLA—Interference

SEIU's first argument is that Holodnak's complaint fails to state a claim for FMLA interference.  The Court disagrees.  The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).  "To prevail on an FMLA interference claim, a plaintiff must show (1) employer conduct that reasonably tends to interfere with, restrain, or deny the

exercise of FMLA rights, and (2) prejudice arising from the interference."[4] *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1376 (D.C. Cir. 2020); *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 164 (D.C. Cir. 2015).

SEIU's motion addresses two alleged statements by Goumbri, but it is only necessary to address the first because that allegation alone supports a plausible claim of interference. Holodnak alleges that, "[u]pon her return" from leave in June and July 2019 to care for her ailing father, "Goumbri told Plaintiff that he would deny any and all of Plaintiff's future leave requests if she did not ask and get a response from him first, even if the leave was designated under FMLA." Am. Compl. ¶ 26. This statement allegedly "discouraged Plaintiff from using her future leave, to include FMLA, out of fear of discipline or termination." *Id.* ¶ 28. This included Holodnak deciding not to take FMLA leave despite her doctor "strongly recommending" that she do so based on a decline in her health. *Id.* ¶ 36. SEIU's argument is that this statement cannot constitute interference because it "is entirely consistent with the FLMA." Mem. at 6; *see also* Reply at 3 ("[S]imply informing or reminding an employee of her obligation to request FMLA leave in advance is not an action that interferes with an employee's decision to request leave.").

---

[4] SEIU proposes a different rule, which would require showing entitlement to take leave, adequate notice of intention to take leave, and interference with the right to take leave. Mem. at 5 (citing *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 65 (D.D.C. 2011)). But this test would exclude some interference cases for failure to meet the notice requirement that otherwise seem to fall within the statutory language, such as interference that succeeds in preventing employees from ever requesting leave. This test is appropriate in other circumstances, such as the paradigmatic case of an employer denying a request for leave that is otherwise guaranteed by the FMLA or when the parties agree that notice was required. *See, e.g., Dougherty v. CNN*, 396 F. Supp. 3d 84, 106–07 (D.D.C. 2019) (using this test where plaintiff's request for leave was denied); *Elzeneiny v. District of Columbia*, 195 F. Supp. 3d 207, 217 (D.D.C. 2016) (using this test where defendant "nowhere argues" that plaintiff "did not provide sufficient notice of her intent to take" leave); *Holloway v. D.C. Gov't*, 9 F. Supp. 3d 1, 7 (D.D.C. 2013) (using this test where defendant's "lone argument" was that plaintiff "did not inform" defendant "that he would need to take leave").

Drawing all factual inferences in favor of Holodnak, this statement would "reasonably tend[] to interfere with, restrain, or deny the exercise of" Holodnak's FMLA rights. *Waggel*, 957 F.3d at 1376. Goumbri's statement does not accurately describe the law. As SEIU acknowledges in its brief, "[i]f the leave is unforeseeable, notice is . . . required 'as soon as practicable under the facts.'" Mem. at 4 (quoting 29 C.F.R. § 825.303(a)). In other words, certain unforeseeable circumstances could justify allowing notice after the leave has begun. The cited regulations have examples of such circumstances. *See* 29 C.F.R. § 825.303(a) ("For example, if an employee's child has a severe asthma attack and the employee takes the child to the emergency room, the employee would not be required to leave his or her child in order to report the absence while the child is receiving emergency treatment."). SEIU's Reply also acknowledges that "advance notice of a request for leave" is not required if "the situation is an emergency." Reply at 2. Goumbri's statement that all future requests would be denied if he had not first been asked and provided a response excludes such circumstances. The premise of SEIU's motion—that Goumbri merely provided accurate information—is therefore incorrect, and that is enough to deny the motion on this ground. Furthermore, allegations of a supervisor misstating the law to an employee can be enough to survive a motion to dismiss. *See, e.g.*, *Townsend-Taylor v. Ameritech Servs., Inc.*, 523 F.3d 815, 817 (7th Cir. 2008) ("It can be 'interference' . . . to provide an employee with misleading instructions that cause him to miss a critical deadline for seeking FMLA leave."); *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 25 (D. Conn. 2018) (explaining that misinforming plaintiff by stating that she was not entitled to take certain leave constitutes interference because it "may have caused Plaintiff to forfeit her right to take such FMLA leave"); *Schober v. SMC Pneumatics, Inc.*, No. IP99-1285CTG, 2000 WL 1911684, at *6 (S.D. Ind. Dec. 4, 2000) ("[M]isleading or giving incorrect information to an

employee by an employer about the employee's FMLA rights or obligations constitutes interference if the incorrect information causes the employee to forfeit FMLA protections."). The motion is therefore denied with respect to the FMLA interference claim.

### B. FMLA—Retaliation

SEIU's second argument is that Holodnak's complaint fails to state a claim for FMLA retaliation. The Court disagrees. "The elements of a prima facie case of FMLA retaliation are the well-known triad: (1) the employee 'engaged in a protected activity under this statute'; (2) the employee 'was adversely affected by an employment decision'; and (3) 'the protected activity and the adverse employment action were causally connected.'" *Gordon*, 778 F.3d at 161 (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000)); *see* Mem. at 8–9 (same).

SEIU challenges only the third element—causation—and the parties focus on only one issue relating to causation: whether the four months between Holodnak taking leave in June 2019 and her termination in October 2019 can plausibly state a claim for causation. *See* Mem. at 9–10; Opp'n at 4; Reply at 3–4. SEIU lands on this one issue after arguing, or assuming, that other aspects of Holodnak's claim fail. First, SEIU argues that Holodnak's allegations of SEIU "threatening to discipline her for taking FMLA leave [and] criticizing and harassing Plaintiff for taking leave to tend to her familial obligations" are not adverse employment decisions, leaving Holodnak's termination as the only pleaded adverse employment decision. *See* Mem. at 8 n.4 (internal quotation marks omitted). Second, SEIU argues that "[t]he only fact Plaintiff cites to support a causal link between her leave and termination is the four-month time period between them." Mem. at 9. Third, SEIU acknowledges that a plaintiff need not make a prima facie case if direct evidence of retaliation is pleaded but argues that Holodnak has not done so. Mem. at 9

8

n.5.  Fourth, SEIU's motion assumes that the June–July leave was the only exercise of Holodnak's FMLA rights alleged to have caused retaliation.  *See* Mem. at 9.  Holodnak does not dispute any of these arguments or assumptions in her opposition.  Her only response regarding the FMLA retaliation claim is that the Fourth Circuit has found delays of up to five months sufficient for a causal connection.  *See* Opp'n at 4.

"It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Hill v. Garland*, No. 19-cv-3389, 2021 WL 965624, at *6 (D.D.C. Mar. 15, 2021) (quoting *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)).  However, a D.C. Circuit panel recently expressed "concerns" with granting motions to dismiss as conceded under Local Civil Rule 7(b) based solely on lack of response.  *See Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016).  "Local Rule 7(b) effectively places the burden of persuasion on the non-moving party: when he fails to respond, he loses.  But Federal Rule 12(b)(6) places this burden on the moving party."  *Id.*  Most circuits that have addressed similar questions concluded that failure to respond alone cannot justify dismissal.  *See id.* at 481–82 (collecting cases).  The panel suggested that district courts "should find alternatives to merits dismissals under Local Rule 7(b) especially appropriate where the attorney's, not the party's, conduct is the problem."  *Id.* at 483.  *Cohen* concerned failure to file any response, as opposed to failure to respond to certain arguments.  *See id.* at 480.  But the rationale based on Rule 12(b)(6) does not seem to turn on that distinction.

SEIU's motion fails whether the Court considers all unopposed arguments to be conceded or examines the sufficiency of the allegations independently.  With all unopposed arguments

9

conceded, the only question is whether a four-month gap can state a plausible claim of causation. SEIU argues that any gap three months or longer cannot show a causal connection, but such a bright-line rule is not supported by case law. The Supreme Court case cited by SEIU explains that "temporal proximity must be 'very close,'" and itself cites cases holding that three- and four-month periods are insufficient, but no firm rule is announced. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam).[5] SEIU also cites a case from this district as supposedly holding that three months is the limit, Mem. at 9–10, but that case merely stated that "[c]ourts *generally* construe 'very close' to mean not more than three months," *Glenn v. Bair*, 643 F. Supp. 2d 23, 42 (D.D.C. 2009) (emphasis added). And at least some cases state that gaps longer than three months can state a claim for causation. *See, e.g.*, *Badwal v. Bd. of Trs. of the Univ. of the D.C.*, 139 F. Supp. 3d 295, 318–19 (D.D.C. 2015) ("In this Circuit, the alleged retaliatory acts must have occurred within three or four months of the protected activity to establish causation by temporal proximity."); *Haile-Iyanu v. Cent. Praking Sys. of VA, Inc.*, 06-cv-2171, 2007 WL 1954325, *5 (D.D.C. July 5, 2007) (denying motion to dismiss FMLA retaliation claim where plaintiff was terminated within eleven months of taking leave after noting that some "federal courts have held that eight or thirteen month time periods were not too temporally disconnected to establish causation"). Given that there is at least some support in the case law for a four-month gap, dismissing the FMLA retaliation claim is not justified at this time.

Were the Court to look beyond the lone question of whether a four-month delay can support causation, the case for denying the motion becomes stronger. *See Jenkins v. Nat'l R.R.*

---

[5] These cases cited by SEIU concern Title VII, not the FMLA. But courts have indicated that the temporal-proximity analysis is the same. *See, e.g.*, *Haile-Iyanu v. Cent. Praking Sys. of VA, Inc.*, 06-cv-2171, 2007 WL 1954325, *5 (D.D.C. July 5, 2007) (citing *Clark Cnty. Sch. Dist.*, 532 U.S. at 273, a Title VII case, when analyzing temporal proximity for FMLA retaliation).

*Corp.*, No. 19-cv-2414, 2020 WL 3971938, at *3 (D.D.C. July 14, 2020) ("In light of these concerns [about Local Civil Rule 7(b)], and in an abundance of caution, the Court will address the merits of the pending motion rather than grant it as conceded."). The parties do not discuss Holodnak's allegations that, (1) "[f]ollowing Mr. Goumbri's threats," she complained twice to "SEIU's Deputy General Counsel that Mr. Goumbri's threats discouraged her from exercising her rights under FMLA out of fear of discipline or termination"; (2) Goumbri was aware of at least the first complaint; and (3) after at least the first complaint, Goumbri excluded Holodnak from meetings, reduced her job duties, and moved her to an office farther from her team. Am. Compl. ¶¶ 38–40, 42–45. These allegations provide at least some additional support for causation between a protected activity and an adverse employment action on top of the four-month temporal proximity. The motion is therefore denied with respect to the FMLA retaliation claim.

### C. Title VII

SEIU's third argument is that Holodnak failed to exhaust administrative remedies for her Title VII claim.[6] The Court agrees. Title VII prohibits discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Before filing suit in federal court alleging a Title VII violation, a plaintiff must, among other things, file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e–5(e)(1).

This Court has previously explained the importance of an EEOC charge's scope:

A lawsuit following an EEOC charge extends to "claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" Under that standard, claims must "arise from 'the administrative investigation that can be reasonably expected to follow the charge of

---

[6] Holodnak does not respond to SEIU's fourth argument: failure to state a claim based on sex or sex-plus-family status. *See* Mem. at 12–14. However, it is not necessary to address this argument because the claim fails on remedy-exhaustion grounds, as discussed in this section.

11

discrimination,'" and whether a claim is properly exhausted thus depends on whether the "investigation resulting from the charge would reasonably encompass" the claim.

*Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, 373 F. Supp. 3d 174, 185–86 (D.D.C. 2019) (cleaned up) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111, 122 (2002); and *Whorton v. Washington Metro. Area Transit Auth.*, 924 F. Supp. 2d 334, 349 (D.D.C. 2013)). "[T]he administrative charge gives the charged party notice of the claim and it 'narrow[s] the issues for prompt adjudication and decision.'" *Caldwell v. ServiceMaster Corp.*, 966 F. Supp. 33, 48 (D.D.C. 1997) (quoting *Park*, 71 F.3d at 907). The administrative-charge requirement "should not be construed to place a heavy technical burden" on plaintiffs, but, at the same time, "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park*, 71 F.3d at 907. "It is where plaintiffs have neither checked the correct box nor given some sort of notice of the substance of their claims in the body of the charge that courts will dismiss for failure to adequately exhaust administrative remedies." *Greer*, 113 F. Supp. 3d at 307 n.9. "An allegation of race-based discrimination does not, by itself, include an allegation of sex discrimination; these allegations are discrete, and they must be identified specifically and separately." *Caldwell*, 966 F. Supp. at 49.

Holodnak's EEOC charge form has two boxes checked to denote what the alleged "discrimination [was] based on": race and retaliation.[7] Mem. Ex. 1, ECF No. 14-1. The "particulars" section of the form says nothing about sex or gender. It only references alleged harassment and termination based on race and retaliation for participation in a protected activity.

---

[7] "When the plaintiff alleges the filing of an administrative charge, that charge may be deemed incorporated into the complaint and the court can consider it on a motion to dismiss." *Greer*, 113 F. Supp. 3d at 304.

*Id.* Nothing in the EEOC charge gives any indication that Holodnak intended to pursue sex- or gender-based claims.

Holodnak's opposing arguments are not persuasive. She does not dispute the authenticity of the EEOC charge form included as an exhibit to SEIU's motion. Her only arguments are that "Plaintiff was unaware that she could indicate more than one box for discrimination," and that EEOC charges must be liberally construed. Opp'n at 5. Regarding the first argument, SEIU points out that Holodnak checked two boxes on the form and described two bases for discrimination in the "particulars" section: race and retaliation. Reply at 5. And the form instructs users to "check appropriate 'box(es).'" *Id.* Holodnak's first purported justification is therefore not persuasive.

Regarding Holodnak's second argument, liberal construction of EEOC charge forms "cannot . . . permit a litigant to bypass the Title VII administrative process." *Park*, 71 F.3d at 907. Courts have dismissed Title VII complaints for failure to exhaust administrative remedies where more detail was provided than was here. *See, e.g.*, *Riggsbee v. Diversity Servs., Inc.*, 637 F. Supp. 2d 39, 42–43 (D.D.C. 2009) (granting defendant's motion for summary judgment on sex-discrimination claim where sex-discrimination box was not checked and narrative described termination as "unlawful racial discrimination," despite narrative also stating that plaintiff was female and replaced by a male); *see also, e.g.*, *Montgomery v. Omnisec Int'l Sec. Servs., Inc.*, 961 F. Supp. 2d 178, 180–82 (D.D.C. 2013) (granting motion to dismiss race- and gender-discrimination claims where those boxes were not checked and narrative referenced only age discrimination, despite cover letter to EEOC Intake Questionnaire stating that plaintiff was the "oldest female African American Special Police Officer" at plaintiff's workplace). Holodnak "neither checked the correct box nor g[ave] some sort of notice of the substance of [her sex or

gender] claims in the body of the charge," *Greer*, 113 F. Supp. 3d at 307 n.9, and therefore she has not administratively exhausted those claims. The motion is therefore granted with respect to the Title VII claim.

## V. CONCLUSION

For the foregoing reasons, SEIU's Motion to Dismiss (ECF No. 7) is **DENIED AS MOOT** and SEIU's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 14) is **GRANTED IN PART AND DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 30, 2021                                      RUDOLPH CONTRERAS
                                                              United States District Judge